CORNELL DEVELOPMENT COMPANY v CITY OF YPSILANTI

1. APPEAL AND ERROR—MOOT QUESTION.

   A question becomes moot when an event occurs which makes it impossible for an appellate court to fashion any effective relief unless the action complained of could affect a party in some collateral way in the future.

2. TAXATION—STATE TAX COMMISSION—ORDERS—AMENDMENT—DUE PROCESS—MOOT QUESTION.

   The question whether a further reduction of a taxpayer's property tax assessment by an order issued by the State Tax Commission after one hearing had been held and an original order had been issued but without any further hearing or notice to the parties denied the city assessing the tax administrative due process of law was rendered moot by the commission's subsequent rehearing and order prior to appeal.

3. TAXATION—STATE TAX COMMISSION—VALUATION—APPEAL AND ERROR.

   Inability to determine from the record with any certainty the exact method and basis relied on by the State Tax Commission in reducing a taxpayer's property tax assessments requires remand to the commission for an opinion outlining the method used and the basis for determining the valuation set forth in the commission's order where the assessing city contended that the findings of the commission were not supported by competent and substantial evidence.

Appeal from State Tax Commission. Submitted Division 2 May 16, 1973, at Lansing. (Docket Nos. 14556, 14557.) Decided June 28, 1973. Leave to appeal denied, 390 Mich 800.

Cornell Development Company and Adams Development Company sought a reduction in prop-

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 761, 762.
[2, 3] 51 Am Jur, Taxation § 753.

erty tax assessments imposed on real property by the City of Ypsilanti. The State Tax Commission ordered the assessments reduced. Defendant appeals by leave granted. Remanded with instructions.

*Bodman, Longley, Bogle, Armstrong & Dahling* (by *Theodore Souris* and *Lloyd C. Fell),* for plaintiffs.

*Bronson & Egnor* (by *Robert E. Helm),* for defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch,* Assistant Attorney General, for the State Tax Commission.

Before: FITZGERALD, P. J., and T. M. BURNS and ADAMS,* JJ.

PER CURIAM. This appeal grows out of a taxpayer's dissatisfaction with property tax assessments levied by the City of Ypsilanti.

The taxpayer owns and operates a 104-unit apartment building under the name of Adams Development Company (hereinafter referred to as Adams) and a 78-unit apartment building under the name of Cornell Development Company (hereinafter denominated Cornell).

In 1969, the city, utilizing the reproduction cost method of determining true cash value for property tax purposes, assessed Adams at $767,210 and set the assessment of Cornell at $595,850. The taxpayer appealed these assessments to the local board of review. The board upheld the assess-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ments, and the taxpayer appealed to the State Tax Commission.

On May 19, 1970, a hearing was held before the State Tax Commission. After considering the evidence presented by both the taxpayer and the city, the commission on September 3, 1970, ordered the assessment on Adams lowered from $767,210 to $683,000 and the assessment on Cornell reduced from $595,850 to $506,000.

Notwithstanding the foregoing reduction in assessments, the taxpayer remained disgruntled and filed applications with this Court for leave to appeal.[1] The taxpayer maintained that the State Tax Commission had based its decision upon errors of law and the adoption of wrong principles, see Const 1963, art 6, § 28, which resulted in an inadequate reduction in the assessments. The city moved to dismiss these applications.

Meanwhile the State Tax Commission reviewed its files, concluded it had erred in setting the assessments, and advised the taxpayer it would enter amended orders further reducing the assessments. Upon receipt of this information, the taxpayer and the assistant attorney general representing the commission signed and filed a stipulation with this Court to dismiss the pending application for appeal. Inasmuch as all of the parties to the suit had sought dismissal of the appeal, either by stipulation or motion, we dismissed the taxpayer's application for leave to appeal on November 12, 1970.

On December 9, 1970, without any further hearing or notice to the parties, the State Tax Commission ordered the assessment on Adams reduced to

---

[1] It should be noted at this point that the circuit courts are without power to review final decisions of the State Tax Commission. *Republic Development Corp v State Tax Comm,* 38 Mich App 166; 195 NW2d 923 (1972).

$591,000 and the assessment on Cornell lowered to $426,300. The city did not appeal this order and continued to tax the apartments at the assessed level of the September, 1970, order, *i.e.,* Adams at $683,000 and Cornell at $506,000. As a result of the city's action, the taxpayer filed numerous suits in Washtenaw County Circuit Court to protect its interests in tax refunds.

In order to settle the assessment question once and for all, the taxpayer and the city filed a joint petition with the State Tax Commission for a rehearing. The petition was granted, and a rehearing on the matter was conducted before the commission on December 8, 1971. No new evidence was offered by any of the parties. The taxpayer and the city presented arguments based upon the evidentiary record made at the original May, 1970, hearing. After reviewing the transcript of the rehearing and examining the briefs submitted by the parties, the commission on April 24, 1972, ordered the assessments on Adams reduced to $591,000 and the assessment on Cornell lowered to $426,300. The city filed an application with this Court for leave to take a delayed appeal from the commission's order on rehearing. We granted the city leave to appeal on October 2, 1972.

The city asserts that it was denied due process of law when the State Tax Commission reevaluated its initial findings in December of 1970 and lowered the assessments on the taxpayer's property.

The taxpayer on the other hand argues that the question of whether the 1970 reduction in assessments denied the city due process of law was rendered moot by the subsequent hearing in December of 1971 which afforded the city due process of law. We agree.

In the absence of the action complained of affecting a party in some collateral way in the future, a question becomes moot when an event occurs which makes it impossible for an appellate court to fashion any effective relief. *Swinehart v Secretary of State,* 27 Mich App 318; 183 NW2d 397 (1970), *leave to appeal denied,* 384 Mich 801 (1971).

Such is the case here. Were we to pass upon the merits of the question posed by the city and find that the State Tax Commission did in fact deny the city administrative due process when it reduced the taxpayer's assessments in December of 1970 without any notice or opportunity for the city to be heard, our only recourse would be to vacate the December, 1970, orders and direct the State Tax Commission to grant a new hearing on the matter in accordance with administrative due process guidelines, *i.e.,* by giving the city notice of the hearing and an opportunity to be heard. *Napuche v Liquor Control Comm,* 336 Mich 398; 58 NW2d 118 (1953). However, the city subsequently received such a hearing before the commission in December of 1971, and the commission superceded its 1970 orders with an opinion and order issued on April 24, 1972. Clearly it would be an idle act on our part to vacate the 1970 orders and direct the State Tax Commission to grant a new hearing in accordance with administrative due process principles since the commission by its action in 1971 and 1972 has already done so. Moreover in light of the commission's subsequent hearing and orders, we cannot perceive how the 1970 reduction of the taxpayer's assessments will continue to adversely affect the city in the future. Therefore the question of whether the 1970 reduction of the taxpayer's property tax assessments denied the city administrative due process of law was ren-

dered moot by the State Tax Commission's rehearing in 1971 and its later order issued in April of 1972.

Next the city attacks the validity of the December, 1971, rehearing asserting that the State Tax Commission erred by basing its decision upon new evidence which was not in the record of the original May, 1970, hearing. This argument is specious and is answered by the following excerpt from the commission's April 24, 1972, opinion which reads:

"While the parties were advised before December 8, 1971, that the commission would not agree to limit the hearing to the evidentiary record theretofore made [as per the parties' stipulation], neither party offered any new evidence. The commission heard arguments of counsel for the taxpayer and for the City of Ypsilanti, marked and received schedules prepared from exhibits and from testimonial evidence contained in the record theretofore made [in May of 1970] and thereupon adjourned the hearing."

Finally the city contends that the State Tax Commission's findings in April of 1972, which reduced the taxpayer's property tax assessments, were not supported by competent and substantial evidence.

We have painstakingly reviewed the record in conjunction with the commission's opinion and order of April, 1972, which reduced the taxpayer's property tax assessments. Although the assessment figures reached by the commission are within the range of proofs, we are unable to determine with any certainty the exact method and basis relied on by the commission to arrive at the figures contained in the April, 1972, opinion and order. Therefore, regrettably, we are unable to pass upon whether there was competent and sub-

stantial evidence to support the commission's valuations.

Accordingly, the case is remanded back to the State Tax Commission for an opinion outlining the method used and the basis for determining the valuation set forth in its April 24, 1972, order.